ORIGINAL

CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2011 MAR 31  PM 3: 58

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

IN RE:
SUBPOENA TO TIME WARNER
CABLE INC.

§
§
§
§
§
§
§
§
§
§

CASE NO. 3-11MC-041-P

48148

---

## TIME WARNER CABLE INC.'S MOTION TO QUASH

---

March 31, 2011

Respectfully submitted,

John T. Cox III
Texas Bar No. 24003722
Elizabeth Y. McElroy
Texas Bar No. 24067758
**LYNN TILLOTSON PINKER & COX, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile

**ATTORNEYS FOR
TIME WARNER CABLE INC.**

DC\1432296.1

I. **INTRODUCTION**

Time Warner Cable Inc. ("TWC") respectfully moves to quash the subpoena that was served upon it in the above-captioned matter. (App. 1-19.) This case is a "related case" to *Funimation Entertainment v. Does 1 – 1,337*, No. 3:11-cv-00147 (N.D. Tex. Filed Jan. 24, 2011), which is being adjudicated by Judge Furgeson.

The party who served the subpoena, Funimation Entertainment, recently filed a lawsuit in this district against hundreds of anonymous John Doe defendants. *See Funimation Entertainment v. Does 1 – 1,337*, No. 3:11-cv-00147 (N.D. Tex. Filed Jan. 24, 2011) ("*Funimation*"). That lawsuit was identical to multiple other lawsuits filed by the same attorney, each alleging that unknown defendants violated the plaintiffs' copyrights by unlawfully distributing their motion pictures (including pornographic motion pictures) over the Internet using the "bit torrent" peer-to-peer protocol.

Movant Time Warner Cable Inc. ("TWC"), which operates as an Internet Service Provider ("ISP") under the name "Road Runner," was not a party to any of those cases. TWC became involved in the cases because the plaintiffs filed their lawsuits but did not know the identities of the Doe defendants. Plaintiffs in those cases served on TWC and other ISPs multiple large, highly burdensome third party subpoenas that demanded that the ISPs provide identifying information about large numbers of subscribers based on lists of Internet Protocol addresses.

Judge Furgeson issued a series of orders finding that plaintiffs' litigation was highly improper. In each case, including the *Funimation* case, Judge Furgeson severed all but one Doe defendant on the ground that joinder of all of these disparate actors in a single litigation violated Federal Rule of Civil Procedure 20. Order, *Funimation*, Doc. 7 (N.D. Tex. filed Feb. 10, 2011).

Judge Furgeson also directed plaintiff to show cause why the Court should not appoint an attorney *ad litem* to represent the remaining Doe defendant's interests prior to authorizing discovery. *See id.*, Doc. 6 (N.D. Tex. filed Feb. 7, 2011). In response to Judge Furgeson's orders, the plaintiffs in each case, including the *Funimation* case, dismissed their litigation altogether.

The *same day* that Funimation dismissed its civil litigation, it served the instant subpoena on TWC, seeking the same information about numerous Doe defendants that it previously had sought through the civil litigation. (*See* App. 1, 20.) Funimation seeks the information through a single, massive subpoena of the kind that Judge Furgeson had ruled was improper. Moreover, this is not the only subpoena that plaintiffs' attorney, Evan Stone, served on TWC seeking this same information. Mr. Stone initially served a new subpoena on TWC from the United States District Court for the Eastern District of Texas, shortly after those clients similarly had dismissed their litigation in this judicial district. (*See* App. 21-39.) Those clients had no connection whatsoever to the Eastern District of Texas, and Mr. Stone's decision to issue the subpoena from that Court can only be viewed as an attempt to evade Judge Furgeson's orders and courtroom in this District. Mr. Stone evidently has now recognized the impropriety of that approach, and has returned to this district.

The instant subpoena is invalid on its face. The statute pursuant to which plaintiff served its subpoena, 17 U.S.C. § 512(h), authorizes service of subpoenas on ISPs when the plaintiff is alleging that the ISP has infringing material *residing on its systems or networks*. But that is not what the plaintiffs in these various cases are alleging. Neither Funimation nor any other plaintiff has ever claimed that TWC has any material residing on its systems that infringes their copyrights. Rather, they claim that individual, anonymous end users allegedly *transmitted*

copyrighted material using a TWC Internet connection as a conduit for their peer-to-peer transmissions. But the case law is consistent and clear that "§ 512(h) does not authorize the issuance of a subpoena to an ISP acting solely as a conduit for communications the content of which is determined by others." *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs.*, 351 F.3d 1229, 1231 (D.C. Cir. 2003), *cert. denied*, 543 U.S. 924 (2004); *see also Recording Indus. Ass'n v. Charter Communs., Inc.*, 393 F.3d 771 (8th Cir. 2005). Consequently, the Court should quash the subpoena.

In addition, in light of plaintiffs' counsel's pattern of issuing improper subpoenas, and seeking to evade this Court's orders, the Court should direct the clerk of court not to authorize or issue any further subpoenas on behalf of plaintiff's attorney, Evan Stone, absent a court order. TWC requests a hearing on this motion.

## II. ARGUMENT

### A. Section 512(h) Does Not Authorize The Instant Subpoena, and Consequently the Court Must Quash the Subpoena.

The party who served this subpoena, and who was a plaintiff in the parallel civil litigation in this judicial district, alleges that certain unknown persons unlawfully distributed its copyrighted material over the Internet using a peer-to-peer protocol, specifically the bit torrent protocol. *See* Complaint, *Funimation*, Dkt. No. 1 (N.D. Tex. filed Jan. 24, 2011). Because plaintiff's attempt to pursue these anonymous defendants through expansive, highly burdensome litigation was rejected, it now turns to 17 U.S.C. § 512(h) as the supposed authorization to obtain identifying information about the 1,000-plus defendants whom it wishes to pursue.

Section 512(h) of the Digital Millennium Copyright Act, 17 U.S.C. § 512(h), authorizes the issuance of subpoenas in certain limited circumstances. The leading decision interpreting 17 U.S.C. § 512 is the D.C. Circuit's opinion in *Recording Industry Association v. Verizon Internet*

*Services*, 351 F.3d 1229 (D.C. Cir. 2003), which included current Chief Justice of the United States Supreme Court on the panel. The D.C. Circuit squarely held that § 512(h) does not authorize the issuance of subpoenas in the exact circumstances presented by this case.

As an initial matter, the D.C. Circuit recognized that § 512 creates four "safe harbors" for ISPs that immunize them from liability for copyright infringement. *Verizon*, 351 F.3d at 1233. The safe harbor that applies here, subsection 512(a), immunizes ISPs "for infringement of copyright by reason of the [ISP's] transmitting, routing, or providing connections for" infringing material. 17 U.S.C. § 512(a). By contrast, other safe harbors such as § 512(c) immunize ISPs for "information *residing on systems or network* at the direction of users," if the ISP, among other things, responds to notifications of alleged infringing activity by expeditiously removing material that is claimed to be infringing. *Id.* § 512(c) (emphasis added).

Section 512(c) requires that anyone asserting that an ISP has infringing material residing on its systems must include in its notification "identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." 17 U.S.C. § 512(c)(3)(A)(iii). Crucially, as the D.C. Circuit recognized, the provision authorizing subpoenas, § 512(h), by its terms expressly incorporates these requirements as statutory prerequisites for the issuance of a subpoena. *Verizon*, 351 F.3d at 1232. Section 512(h) expressly states as a "basis for granting [a] subpoena" that the subpoena may be issued *only* "if the notification filed satisfies the provisions of subsection (c)(3)(A)." 17 U.S.C. § 512(h)(4).

The D.C. Circuit's central holding was that this notification requirement cannot possibly be satisfied when the ISP is merely a conduit. As the court explained,

> [I]nfringing material obtained or distributed via P2P file sharing is located in the computer (or in an off-line storage device, such as a compact disc) of an individual user. No matter what information the copyright owner may provide, the ISP can neither 'remove' nor 'disable access to' the infringing material because that material is not stored on the ISP's servers. [An ISP] can not remove or disable one user's access to infringing material resident on another user's computer because [the ISP] does not control the content on its subscribers' computers.

*Verizon*, 351 F.3d at 1235.

Likewise, the United States Court of Appeals for the Eighth Circuit, in agreeing with and endorsing the D.C. Circuit's reasoning, held that "§ 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)." *Recording Indus. Ass'n v. Charter Communs., Inc.*, 393 F.3d 771, 777 (8th Cir. 2005). These decisions squarely hold that when the allegation is that the ISP has transmitted infringing material as a conduit, the requirements for a § 512(h) subpoena cannot be met as a matter of fact and law, and thus "§ 512(h) does not by its terms authorize" the issuance of a subpoena. *Verizon*, 351 F.3d at 1236.

The D.C. Circuit further held that this result was consistent not only with the text of the statute, but also with its structure and legislative history. *Id.* at 1236-39. The court recognized that § 512(h)'s incorporation of subsection (c)'s notification requirements means that "§ 512(h) applies to an ISP storing infringing material on its servers in any capacity ... and does not apply to an ISP routing infringing material to or from a personal computer owned and used by a subscriber." 351 F.3d at 1237. The court also found that the legislative history did not contemplate peer-to-peer file sharing, and thus it was not surprising that Congress did not expect or intend § 512(h) to apply to such activities.

Moreover, the decisions of the D.C. and Eighth Circuits are consistent with other provisions of applicable law. The Communications Act protects cable subscribers' privacy, and

generally prohibits cable operators from disclosing a subscriber's personally identifiable information without a court order. 47 U.S.C. § 551(c)(2)(B). Plaintiff's approach of trying to expand the reach of § 512(h) would significantly undermine the Communications Act's protection of subscriber privacy. The approach of the D.C. and Eighth Circuits, by contrast, carefully cabins the scope of § 512(h) subpoenas and preserves the Communications Act's protection of subscriber information.

Multiple other courts have endorsed the D.C. and Eighth Circuits' reasoning. *See, e.g., Recording Indus. Ass'n of Am. v. Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945 (M.D.N.C. 2005); *Interscope Records v. Doe*, 494 F. Supp. 2d 388, 391 (E.D. Va. 2007). Moreover, their reasoning is directly on point. Here, as in *Verizon* and *Charter*, the plaintiff has alleged that end users distributed files over an ISP's network using a peer to peer protocol, but the plaintiff does not allege that the ISP has any infringing material residing on its servers. The requirements for issuance of a § 512(h) subpoena thus have not been satisfied, and cannot be satisfied, and the subpoena in this case thus is invalid.

Plaintiff's attorney does not cite any case supporting the issuance of this subpoena. Rather, he just points to a Texas case that stands for the uncontroversial notion that out-of-circuit decisions are not binding. (*See* App. 1 (citing *Garrett v. Comcast Communs., Inc.* 2004 U.S. Dist. LEXIS 14218 (N.D. Tex. July 23, 2004).) But the *Garrett* decision does not help plaintiff at all. First, the court in *Garrett* noted that the plaintiff in that case had not even alleged sufficient facts to determine whether the *Verizon* decision applied in the first place. 2004 U.S. Dist. LEXIS 14218 at *5 n.1. Second, the court did not disagree with the *Verizon* decision in any way. *Id.* In other words, Mr. Stone has not identified any case in this circuit that disagrees with *Verizon* or suggests that it is not directly applicable to this situation.

In any event, even leaving aside the consistent case law from other jurisdictions rejecting plaintiffs' subpoena, the text of § 512(h) is clear on its face. Plaintiff has not satisfied (and cannot satisfy) the statute's requirements because it has not satisfied (and cannot satisfy) the mandatory notice provisions of § 512(c)(3)(A). Those notice provisions are prerequisites for the issuance of a § 512(h) subpoena and they require them to identify the material "that is to be removed or access to which is to be disabled, and information reasonably sufficient to permit the service provider to locate the material." There simply is no such material, nor could there be. The Court therefore should quash the subpoena.

**B.     The Court Should Direct the Clerk of Court Not To Authorize or Issue Any Further Subpoenas By Evan Stone Absent A Court Order.**

Finally, plaintiff's counsel, Evan Stone, now has demonstrated a pattern of issuing improper subpoenas. Once his civil cases were dismissed in this district, he promptly went to a different judicial district (where neither the plaintiffs nor the defendants have any connection), in order to pursue the same highly burdensome discovery that this Court had just rejected, in a transparent attempt to evade this Court's orders. Now he is continuing to serve subpoenas that are plainly invalid on their face. The only result is that Mr. Stone is imposing extensive burdens and costs on TWC. In this circumstance, and to protect TWC from further burdens and costs in defending itself, the Court should direct the Clerk of Court not to authorize any further subpoenas to be issued by Mr. Stone absent an order of the Court authorizing discovery.

### III.   CONCLUSION

Because § 512(h) is clear on its face, and because it is readily evident that the subpoena fails to satisfy the statute's requirements, the Court should quash the subpoena. The Court also should direct the Clerk of Court not to issue or authorize further subpoenas to Evan Stone.

March 31, 2011               Respectfully submitted,

                                           _/s/ John T. Cox III_
                                           John T. Cox III
                                           Texas Bar No. 24003722
                                           Elizabeth Y. McElroy
                                           Texas Bar No. 24067758
                                           **LYNN TILLOTSON PINKER & COX, LLP**
                                           2100 Ross Avenue, Suite 2700
                                           Dallas, Texas  75201
                                           (214) 981-3800 Telephone
                                           (214) 981-3839 Facsimile

                                           **ATTORNEYS FOR**
                                           **TIME WARNER CABLE INC.**

### CERTIFICATE OF CONFERENCE

I certify that counsel for Time Warner Cable Inc. conferred with Mr. Evan Stone on March 30, 2011, regarding the relief requested in this Motion.  Mr. Stone stated that he is opposed to the relief requested in this Motion.

                                           _/s/ John T. Cox III_
                                           John T. Cox III

### CERTIFICATE OF SERVICE

I certify that I served true and correct copies of the foregoing document was served upon the following party via ECF notification and first-class mail on March 31, 2011:

Mr. Evan F. Stone
Law Offices of Evan Stone
624 West University Drive
Suite 386
Denton, Texas 76201
469-248-5238

                                           _/s/ John T. Cox III_
                                           John T. Cox III